UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JIMMY VIVERETTE,

    Plaintiff,

v.

WEXFORD HEALTH SOURCES INC.,
CHRISTINE BROOKS, N. BAKER and
TRAVIS JAMES,

    Defendants.

Case No. 17-cv-586-JPG-DGW

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 42) of Magistrate Judge Donald G. Wilkerson recommending that the Court deny the motion for summary judgment filed by defendants Christine Brooks and Travis James seeking dismissal for failure to exhaust administrative remedies (Doc. 26). Brooks and James have objected to the Report (Doc. 43).

**I.**     **Report Review Standard**

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

**II.**     **Report**

After holding a videoconference hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th

Cir. 2008),[1] Magistrate Judge Wilkerson found in the Report that plaintiff Jimmy Vivarette, an inmate of Lawrence Correctional Center ("Lawrence CC") at all times relevant to this case, had exhausted all administrative remedies available to him before filing this lawsuit as required by 42 U.S.C. § 1997e(a). Magistrate Judge Wilkerson came to this conclusion even though Vivarette did not file a grievance until more than 60 days after discovering the problem he was grieving as required by 20 Ill. Admin. Code § 504.810(a) (2015).

The facts Magistrate Judge Wilkerson set forth regarding Vivarette's injury are not seriously disputed. Vivarette was injured on December 21, 2014, and was treated by Brooks and James, medical personnel at Lawrence CC, shortly thereafter. They did not recognize that Vivarette had torn his Achilles tendon, which was first diagnosed by Dr. Coe on March 30, 2015. Vivarette filed an emergency grievance with the Lawrence CC warden, the chief administrative officer, on June 13, 2015, complaining of the treatment he received from Brooks and James. Five days later the warden found the grievance did not present an emergency situation, returned it to Vivarette, and directed him to file a grievance in the normal, non-emergency manner. Vivarette did not immediately appeal the warden's decision to the Administrative Review Board ("ARB"). Instead, he submitted the grievance to his counselor, who responded on August 7, 2015, and then to the ARB, which received it on September 14, 2015. The ARB directed Vivarette to submit the grievance officer's and warden's responses. Vivarette filed this lawsuit in June 2017.

Magistrate Judge Wilkerson found that Vivarette was credible when he testified that he did not realize Brooks and James had treated him incorrectly until Dr. Coe diagnosed him with a torn

---

[1] Although Vivarette made statements at the hearing, he was never put under oath. However, because his response to the defendants' summary judgment motion was verified and because the issue was exhaustion of administrative remedies, an affirmative defense that must be proved by the defendants, the lack of sworn hearing testimony from the plaintiff is not fatal to his objection to summary judgment.

Achilles tendon on March 20, 2015, and that he further delayed filing a grievance because he did not know about the grievance process, having never gone through orientation at Lawrence CC, until another inmate told him about it. Thus, he was excused from not grieving his problem within 60 days. Citing the non-precedential decision of *Bentz v. Ghosh*, 718 F. App'x 413 (7th Cir. 2017), Magistrate Judge Wilkerson further found that once Vivarette had submitted his emergency grievance, he was not required to do anything further and had exhausted his administrative remedies.

**III.     Objection and Analysis**

Brooks and James object on a number of grounds. First, they challenge Magistrate Judge Wilkerson's decision to believe Vivarette when he stated he had never been informed of the grievance procedure until it was explained to him by another inmate within the 60 days before his emergency grievance. They point to documents they claim show Vivarette was informed of the grievance procedure in April 2013, when he arrived at Lawrence CC (a cumulative counseling summary for Vivarette stating that he received the handbook during orientation and two later versions of the handbook), his failure to take opportunities to ask his counselor for assistance, and his failure to mention in his complaint a prior lawsuit involving the same facts. None of these factors cause the Court to question Magistrate Judge Wilkerson's credibility determination. There was no testimony about the meaning or reliability of the cumulative counseling summary, and neither of the handbooks provided as exhibits existed in April 2013 when Vivarette supposedly went through orientation. Even the handbooks provided do not explain the emergency grievance process. Vivarette had no obligation to ask his counselor for help outside the grievance process, and Vivarette could reasonably misconstrue his prior lawsuit about the

3

same problems in this case as the same lawsuit. The defendants have not given the Court any compelling reason not to defer to Magistrate Judge Wilkerson's credibility determination.

The defendants further argue Magistrate Judge Wilkerson erred in the legal conclusion that Vivarette was not obligated under the Illinois Administrative Code to appeal the warden's decision that Vivarette's grievance did not present an emergency. Indeed, Magistrate Judge Wilkerson relied on *Bentz v. Ghosh*, 718 F. App'x 413 (7th Cir. 2017), in which an Illinois inmate filed suit after the warden had found his grievance not to be an emergency but before the ARB had ruled on his appeal of that decision. *Id.* at 416. The Court of Appeals held that the inmate was not required to refile his rejected emergency grievance using the non-emergency grievance procedure, *see Thornton v. Snyder*, 428 F.3d 690, 694 (7th Cir. 2005), and that, "Under these circumstances Illinois rules do not require him to appeal that decision to the Administrative Review Board." *Bentz*, 718 F. App'x at 418.

It is hard to say why the *Bentz* court came to the conclusion that no appeal of the emergency status decision was required because it did not explain its reasoning. However, the following discussion sets forth a plausible path to that conclusion, one which the Court finds persuasive. The path starts from the principle that it is the warden's "response" that makes an appeal available:

> If, *after receiving the response of the Chief Administrative Officer*, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision.

20 Ill. Admin. Code § 504.850(a) (2015) (emphasis added). It appears the *Bentz* court took a narrow view of the meaning of "the response of the Chief Administrative Officer." Under its view, the "response" would include the content of the box on the "Response to Offender's Grievance" form (DOC 0047) labeled "Chief Administrative Officer's Response," where the

4

warden's response to the substance of the grievance is usually found. [2] However, the *Bentz* court apparently did not consider the "response" to include a decision that the grievance is not an emergency, which is recorded in the box labeled "EMERGENCY REVIEW" on the Offender's Grievance form (DOC 0046). *See* Offender's Grievance (Doc. 27-1 at 5). Thus, under *Bentz*, until an inmate receives a substantive "response" from the warden on the "Response to Offender's Grievance" form, exhaustion does not require an appeal to the Illinois Department of Corrections ("IDOC") Director (or his designee, the ARB).

This interpretation of "response" makes sense in light of the purpose of administrative review: "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007). An appeal to the ARB from the bare-bones decision about whether a grievance is an emergency serves none of these purposes. While it is true that a system where administrative remedies are considered exhausted once the warden rejects emergency status does not accomplish these goals either, it appears IDOC officials did not intend the process to work that way. Internal policies indicate they instead intended to require inmates to pursue the regular grievance process for grievances the warden determined to be non-emergencies:

> a. The Chief Administrative Officer shall review the offender's grievance to determine if there is a substantial risk of imminent personal injury or other serious harm to the offender. The Chief Administrative Officer shall document the review and determination in the "Emergency Review" section of the DOC 0046 ["Offender's Grievance" form].

---

[2] The exhibits in this case do not include the page entitled "Response to Offender's Grievance" on which the grievance officer makes a report and recommendation on the grievance and the warden records his response to the grievance. However, the Court is familiar with the standard form from its many other cases brought by Illinois Department of Corrections inmates. *See, e.g.,* Response to Offender's Grievance, *Shatner v. Atchison*, No. 13-cv-704-RJD (Doc. 45-1 at 9).

> * * *
>
> (2) If the emergency grievance is not substantiated, the Chief Administrative Officer shall so indicate in writing and return the grievance form to the offender.
>
> b. If the offender rejects the Chief Administrative Officer's decision, *he or she must forward a copy of the grievance form that includes the Chief Administrative Officer's decision to the emergency request through the normal review process*.

Local Offender Grievance Procedures, IDOC Admin. Directive 04.01.114(II)(G)(2) (2012), https://www.law.umich.edu/special/policyclearinghouse/Pages/filedetail.aspx?itemid=428 (emphasis added). That the Illinois Administrative Code did not actually require this step, *see Thornton*, 428 F.3d at 694 ("There is nothing in the current regulatory text, however, that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis."), appears to be a drafting error that Illinois officials attempted to correct in 2017 amendments to the code, *see* 20 Ill. Admin. Code § 504.840(c) (2017) ("If the Chief Administrative Officer determines that the grievance should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process."), *see Smith v. Asselmeier*, No. 17-cv-1237-JPG-DGW (S.D. Ill. July 23, 2018) (discussing attempt to correct regulations to reflect IDOC officials' intent).

In sum, the foregoing interpretation of the Illinois Administrative Code is one plausible explanation for *Bentz*'s conclusion regarding exhaustion of remedies for rejected emergency grievances, and the defendants have not convinced the Court it should not follow that conclusion. If *Bentz* was wrongly decided, it is for the Court of Appeals to so hold.

Even if Vivarette were required by § 504.850(a) to appeal the warden's decision that his

grievance did not present an emergency, the record shows he did. The grievance Vivarette sent to the ARB in September 2015 contained the warden's decision on the emergency nature of the grievance, and nothing in his appeal documents indicated he wanted to exclude that decision from the appeal. True, he submitted the appeal more than 30 days after the warden's June 18, 2015, decision, but the ARB did not reject the appeal because of this untimeliness, so the defendants cannot invoke the timing rule now. *See Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (procedural shortcoming amounts to failure to exhaust only if expressly relied on by prison administrators). Instead, the ARB returned the appeal because it did not comply with the regular grievance process—it did not contain the grievance officer's report or the warden response to the merits of the grievance, and it may not have been submitted timely to a grievance officer. However, because Vivarette was not required to use the regular process as explained in *Thornton*, he did not need to satisfy those requirements in order to exhaust. The IDOC Director did not render a decision on the warden's emergency determination within 6 months of the ARB's receipt of the grievance as required by § 504.850(f), so Vivarette was free to file this lawsuit in June 2017. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002) (administrative remedies are "unavailable" when officials fail to respond, or indefinitely delay a response, to grievance).

After *de novo* review, the Court agrees with Magistrate Judge Wilkerson that Vivarette did not fail to exhaust all administrative remedies available to him before filing this lawsuit.

## IV. Conclusion

For the foregoing reasons, the Court:

- **ADOPTS** the Report (Doc. 42) as **SUPPLEMENTED** by this order;
- **OVERRULES** the defendants' objections (Doc. 43); and

- **DENIES** the defendants' motion for summary judgment (Doc. 26).

**IT IS SO ORDERED.**
**DATED:   July 23, 2018**

                                               s/ J. Phil Gilbert
                                               **J. PHIL GILBERT**
                                               **DISTRICT JUDGE**