IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JIMMY VIVERETTE, #M35784, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 17-cv-00586-JPG |
| ) | |
| CHRISTINE BROOKS and ) | |
| TRAVIS JAMES, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM & ORDER

**GILBERT, District Judge:**

This matter comes before the Court for consideration of a Motion for Summary Judgment on the Merits filed by Defendants Christine Brooks and Travis James. (Doc. 64). For the reasons set forth below, Defendants' Motion for Summary Judgment shall be **GRANTED**.

#### PROCEDURAL HISTORY

Plaintiff Jimmy Viverette (Inmate No. M35784), is currently incarcerated at Lawrence Correctional Center ("Lawrence"). He filed this lawsuit pursuant to 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment rights resulting from inadequate medical care for a partial tear of his Achilles tendon that occurred at Lawrence in December 2014 and necessitated surgery in May 2015. (Doc. 1). Following threshold review of the Complaint under 28 U.S.C. § 1915A, Plaintiff was allowed to proceed with a single Eighth Amendment medical deliberate indifference claim against Defendants Christine Brooks and Travis James. (Doc. 8). This claim was dismissed without prejudice against Defendants Baker and Wexford Health Sources, Inc. (*Id.*).

Following discovery, Defendants filed their Motion for Summary Judgment (Doc. 64) on June 4, 2019, relying primarily on Plaintiff's deposition testimony (Doc. 65-1), Plaintiff's medical

1

records (Doc. 65-2), Christine Brooks' declaration (Doc. 65-3), and Travis James' declaration (Doc. 65-4). Defendants filed a Supplement (Doc. 71) on July 3, 2019. Plaintiff filed a Response in Opposition to the Motion for Summary Judgment on August 7, 2019 (Doc. 73), relying on Plaintiff's declaration (Doc. 74) and a later-filed Supplement (Doc. 76).

## FINDINGS OF FACT

**A.    The Parties**

Plaintiff Jimmy Viverette is an inmate in the custody of the Illinois Department of Corrections ("IDOC") and was housed at Lawrence at all relevant times. (Doc. 65-1, p. 9).

Defendant Christine Brooks is a registered nurse, employed by Wexford Health Services, Inc. to provide medical care to inmates at Lawrence at all relevant times. (Doc. 65-3, ¶¶ 2-3).

Defendant Travis James is a licensed Physician Assistant (PA) who was employed by Wexford Health Services, Inc. to provide medical care to inmates at Lawrence at all relevant times. (Doc. 65-4, ¶¶ 2-3).

**B.    Plaintiff's Medical Care**

Plaintiff injured his left Achilles tendon while playing basketball on December 21, 2014. (Doc. 65-1, p. 12; Doc. 73, p. 5; Doc. 74, ¶ 4). He returned to his housing unit to await medical attention. (Doc. 65-1, pp. 12-16; Doc. 74, ¶ 5). Nurse Brooks arrived thirty minutes later and escorted him to the prison's health care unit (HCU) in a wheelchair. (Doc. 65-1, p. 15; Doc. 65-3, ¶¶ 6-7; Doc. 74, ¶ 5).

Plaintiff reported hearing a loud "pop" in the back of his left leg at the time of his injury. (Doc. 65-1, pp. 15-16). Nurse Brooks examined Plaintiff's left foot, leg, and toes and observed nothing wrong with them. (Doc. 65-2, p. 1; Doc. 65-3, ¶¶ 7-8; Doc. 73, p. 5, ll. 8-9). She noted no swelling, no discoloration, intact skin, brisk capillary refill, strong distal pulse, and good range

of motion. (Doc. 65-1, pp. 19-20; Doc. 65-2, p. 1; Doc. 65-3, ¶ 9). She probed his injury to make sure "everything was working," and Plaintiff reported that everything was. (Doc. 65-1, p. 17).

Nurse Brooks documented Plaintiff's complaints in her nurse sick call notes and circled "follow-up" "PRN" (as needed). (Doc. 65-1, pp. 19-20; Doc. 65-2, p. 1; Doc. 74, ¶ 9). Plaintiff understood that Nurse Brooks would schedule a follow-up appointment on his behalf. (*Id*.). The nurse educated Plaintiff on care of his injury and the importance of following up with a request for additional treatment for increased pain, numbness, or skin color changes. (Doc. 65-1, pp. 19-20; Doc. 65-3, ¶ 18). Nurse Brooks did not deem an immediate referral to a physician medically necessary and left it up to Plaintiff to request another appointment. (Doc. 65-1, p. 22; Doc. 65-2, pp. 7-8; Doc. 65-3, ¶¶ 19-22, 26-27; Doc. 71-1, pp. 7-8; Doc. 74, ¶¶ 9-10). She did not diagnose Plaintiff with a torn Achilles tendon. (Doc. 65-3, ¶¶ 12-13). She also made no observation suggesting that Plaintiff was physically unable to bear weight on his leg, but she did notice that he was in an "altered state of comfort." (*Id*. at ¶¶ 10-11). Nurse Brooks wrapped Plaintiff's left ankle with an Ace bandage and provided him with Ibuprofen (200 mg) for use three times daily for three days to manage pain. (Doc. 65-2, p. 1; Doc. 65-3, ¶¶ 14-15; Doc. 73, p. 5; Doc. 74, ¶ 8). Plaintiff walked back to his housing unit after meeting with the nurse. (Doc. 65-1, pp. 16-17).

Meanwhile, Nurse Brooks prepared an Offender Injury Report to document the injury and treatment plan for review by Doctor Coe the following day. (*Id*.). Dr. Coe reviewed the Offender Injury Report on December 22, 2019, and he did not deem it necessary to schedule a follow-up appointment. (Doc. 65-1, pp. 17, 21; Doc. 65-2, pp. 7-8; Doc. 65-3, ¶ 27; Doc. 74, ¶ 10).

On January 24, 2015, Plaintiff submitted a healthcare request and was seen by a nurse, who provided him with more pain medication and referred him to PA Travis James for further evaluation. (Doc. 65-1, pp. 24-26; Doc. 65-2, p. 2; Doc. 74, ¶ 11). PA James conducted a physical

3

examination of Plaintiff on January 27, 2015.  (Doc. 65-1, p. 27; Doc. 65-2, p. 3; Doc. 65-4, ¶¶ 5-6; Doc. 71-1, p. 3; Doc. 74, ¶ 13).  Injuries of the Achilles tendon typically include swelling, deformity, and difficulty bearing weight, but James observed none of these symptoms.  (Doc. 65-1, p. 29; Doc. 65-2, p. 3; Doc. 65-4, ¶ 11).  James also observed no physical deformities in Plaintiff's lower left extremity.  (Doc. 65-2, p. 4; Doc. 65-4, ¶ 9).  With the exception of left Achilles tendon pain, James noted that the examination was normal.  (Doc. 65-4, ¶ 8; Doc. 74, ¶ 14).  James provided Plaintiff with a new Ace bandage wrap and a 3-month prescription of naproxen (500 mg) to be taken twice daily for pain.  (Doc. 65-4, ¶¶ 12-13; Doc. 74, ¶ 14).

Sometime after this appointment, Plaintiff noticed a knot form on the back of his lower left leg.  (Doc. 65-1, pp. 30-31; Doc. 74, ¶ 15).  He submitted another health care request and was seen in nurse sick call on March 18, 2015.  (Doc. 65-1, p. 32; Doc. 65-4, ¶ 5; Doc. 74, ¶¶ 16-17).  On March 23, 2015, James examined Plaintiff and recorded a "dip" in palpation of Plaintiff's left Achilles tendon and a positive "Thompson sign" indicative of no reflex when the left calf was squeezed and a possible Achilles tendon tear.  (Doc. 65-1, pp. 34-35; Doc. 65-2, pp. 4-5; Doc. 65-4, ¶¶ 15-17; Doc. 71-1, p. 5; Doc. 74, ¶¶ 18-19).  Given these new objective findings, James referred Plaintiff to Dr. Coe for further evaluation and treatment.  (Doc. 65-2, pp. 4-5; Doc. 65-4, ¶ 18; Doc. 71-1, p. 5).  In the meantime, James offered Plaintiff crutches, but Plaintiff declined the offer.  (Doc. 65-1, p. 35).

On March 30, 2015, Dr. Coe examined Plaintiff's injury for the first time.  (Doc. 65-1, pp. 39-40; Doc. 65-2, p. 6; Doc. 71-1, p. 6).  The doctor told Plaintiff that he was missing half of his Achilles tendon.  (Doc. 65-1, p. 40).  Plaintiff was issued a boot and scheduled for surgery with an outside specialist.  (Doc. 65-1, pp. 42-44, 55; Doc. 73, p. 11).  He was also issued an Ace bandage

permit, low gallery permit, and a low bunk permit.  (Doc. 65-1, p. 55; Doc. 71-1, p. 9).  Plaintiff underwent surgery on May 26, 2015.  (Doc. 73, p. 10).

## LEGAL STANDARD

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celetex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A material fact is a fact that "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Id*.  The moving party has the burden of establishing that no material facts are genuinely disputed.  *Lawrence v. Kenosha Cty.*, 391 F.3d 837, 841 (7th Cir. 2004).  When presented with a motion for summary judgment, the Court does not decide the truth of the matters presented, and it cannot "choose between competing inferences or balance the relative weight of conflicting evidence."  *Anderson*, 477 U.S. at 248; *Hansen v. Fincantieri Marine Grp., LLC,* 763 F.3d 832, 836 (7th Cir. 2014) (citations omitted); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir 1994).  The Court must instead "view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party."  *Hansen*, 763 F.3d at 836.  If the "evidence is such that a reasonable jury could return a verdict for the nonmoving party[,]" then a genuine dispute of material fact exists, and summary judgment must be denied.  *Zaya v. Sood*, 836 F.3d 800, 804 (7th Cir. 2016).

## DISCUSSION

The Eighth Amendment governs Plaintiff's claim against Nurse Brooks and PA James.  This amendment prohibits cruel and unusual punishment of convicted persons.  *See* U.S. CONST.,

5

amend. VIII. It safeguards inmates against pain and suffering that serves no penological purpose. *See id.*; *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Under the Eighth Amendment, prison officials are obligated to provide inmates with adequate medical care. *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

When presented with an Eighth Amendment claim of inadequate medical care, the Court conducts a two-part analysis. *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005). The Court must first determine whether the plaintiff suffered from an objectively, sufficiently serious medical condition. *Id.* The Court must then determine whether each defendant responded with deliberate indifference, from a subjective standpoint. *Id.* This analysis requires the Court to evaluate the "totality of an inmate's medical care." *Petties v. Carter*, 836 F.3d 722, 728-29 (7th Cir. 2016).

The parties do not dispute that Plaintiff's injury to his Achilles tendon was sufficiently serious to satisfy the objective prong of this analysis at summary judgment.

The question is whether either defendant responded to Plaintiff's serious medical condition with deliberate indifference. A defendant is deliberately indifferent when he knows of a serious risk to the prisoner's health but consciously disregards the risk. *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012) (citation omitted). This is a high hurdle to clear because it requires a showing of "something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Rosario v. Brawn*, 670 F.3d 816, 821-22 (7th Cir. 2012) (quoting *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006)). A mere "difference of opinion" in the course of treatment does not rise to the level of deliberate indifference. *Garvin v. Armstrong*, 236 F.3d 896, 899 (7th Cir. 2001). A prisoner's dissatisfaction with a prescribed course of treatment is likewise insufficient to establish deliberate indifference, unless the treatment is "so blatantly inappropriate

as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted).  Negligence, gross negligence, or even recklessness does not support an Eighth Amendment claim. *Collins v. Seeman*, 462 F.3d at 762.

**A.     Nurse Brooks**

No reasonable jury could find that Nurse Brooks responded to Plaintiff's injury with deliberate indifference.  She treated Plaintiff on a single occasion—December 21, 2014.  On that date, Nurse Brooks met Plaintiff in his housing unit and escorted him to the HCU.  She examined his left leg, foot, and toes.  She noted no obvious signs of injury.  She observed no swelling, no discoloration, intact skin, brisk capillary refill, strong distal pulse, and good range of motion.  She probed the area near Plaintiff's injury to make sure "everything was working," and Plaintiff confirmed that everything was "working."  (Doc. 65-1, p. 17).  Nurse Brooks did not diagnose Plaintiff with a torn Achilles tendon or deem the injury in need of a referral at that time.  These facts are undisputed.

It is also undisputed that Nurse Brooks treated Plaintiff's presenting symptoms.  For pain, the nurse provided Plaintiff with Ibuprofen.  For the injury itself, Nurse Brooks provided an Ace bandage wrap and education on proper treatment of the injury.  The parties discussed the importance of follow-up care, although they disagree about who was supposed to request it. Plaintiff understood that the nurse would request the follow-up appointment, and the nurse indicated that Plaintiff was supposed to request an appointment *if* his symptoms changed or worsened.  The nurse also issued an Offender Injury Report documenting the injury and plan for treatment, and Dr. Coe decided not to schedule a follow-up appointment after reviewing it the

following day on December 22, 2014. The claim against Nurse Brooks arises from a simple misunderstanding, at best, or negligence, at worst. Neither amounts to deliberate indifference.

At the initial examination, Plaintiff made the nurse aware of his pain and of the absence of any other symptoms suggesting that additional treatment was even necessary. She treated his presenting symptoms. Even if Nurse Brooks told Plaintiff that she would schedule a follow-up appointment and failed to do so, there is no evidence to suggest that the nurse's conduct was intentional or in conscious disregard of a serious risk to Plaintiff's health—particularly where Plaintiff never complained to the nurse again about ongoing, increasing, and new symptoms. *See, e.g., Heard v. Chapman*, 759 F. App'x 495, 498 (7th Cir. 2019) (doctor's failure to scheduled two-month follow-up did not amount to deliberate indifference where plaintiff's dental pain subsided with treatment during that time). *See also Snipes*, 95 F.3d at 591, n. 1 (mere lack of a follow-up for minor injury cannot support deliberate indifference claim). Nurse Brooks is entitled to summary judgment under the circumstances.

**B.     PA James**

The Court reaches the same conclusion in regard to PA James. Plaintiff met with James on January 27, 2015 and March 23, 2015. At the initial appointment, James noted Plaintiff's left lower leg pain. However, he observed no other symptoms suggesting an Achilles tendon injury, such as swelling, deformity, and difficulty bearing weight. James observed no physical deformities in Plaintiff's lower left extremity. With the exception of left Achilles tendon pain, James noted that the examination was normal. James treated Plaintiff's injury with a new Ace bandage wrap and his pain with a 3-month prescription of naproxen (500 mg) to be taken twice daily for pain.

It is undisputed that a knot formed on the back of Plaintiff's lower left leg sometime *after* this appointment.  When Plaintiff noticed the knot and requested additional medical treatment on March 18, 2015, he received it.  He first met with a nurse, who treated his pain and referred him back to James.  On March 23, 2015, James observed symptoms indicative of an Achilles tendon injury and referred Plaintiff, without delay, to Doctor Coe.  Plaintiff underwent surgery less than two months later.

The "nub of this subjective inquiry is what risk the medical staff knew of and whether the course of treatment was so far afield as to allow a jury to infer deliberate indifference." *Duckworth v. Ahmad*, 532 F.3d 675, 680 (7th Cir. 2008) (citations omitted).  Where a medical provider labors under a misunderstanding regarding the need for additional treatment, the Seventh Circuit has held that such conduct does not support a claim of deliberate indifference.  *See id.*  Like Nurse Brooks, PA James cannot be said to have been deliberately indifferent to Plaintiff's injury under this standard.  He timely and adequately treated Plaintiff's presenting symptoms and is therefore entitled to summary judgment.

## DISPOSITION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (Doc. 64) is **GRANTED**.  **COUNT 1** is **DISMISSED with prejudice** against Defendants **CHRISTINE BROOKS** and **TRAVIS JAMES**.  The Clerk is **DIRECTED** to enter judgment accordingly and **CLOSE** this case.

**IT IS SO ORDERED**.

**DATED: 6/2/2020**                              s/J. Phil Gilbert
                                                **J. PHIL GILBERT**
                                                **United States District Judge**